# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MCEWEN,<br><br>Plaintiff,<br>      v.<br><br>UPMC SHADYSIDE PRESBYTERIAN HOSPITAL,<br><br>Defendant. | 2:09-cv-1181 |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is the MOTION FOR SUMMARY JUDGMENT *(Document No. 20),* with brief in support, filed by Defendant UPMC Shadyside Presbyterian Hospital ("UPMC"). The parties have developed their respective positions as to the Concise Statement of Material Facts ("CSMF") (*Document Nos. 22, 26)*. Plaintiff John McEwen has filed a brief in opposition (*Document No. 27*), UPMC has filed a reply brief (*Document No. 28*), and the motion is ripe for disposition.

Factual and Procedural Background

Plaintiff's Complaint asserts claims for failure to accommodate his disability under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111(9), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 962(c).

Plaintiff began working for UPMC in the early 1990s as a Radiological Technologist. From 2005-2007, McEwen worked in the Cardiac Catheterization Lab ("Cath Lab") at Shadyside

Hospital. At all times relevant to this case, Plaintiff's immediate supervisor was Karen LaGard, the Lead Nurse in the Cath Lab. LaGard's supervisor was Judy Biernesser, the Director of Cardiology.

On August 25, 2005, McEwen was involved in a serious motorcycle accident resulting in the amputation of his left leg. McEwen was unable to work and was placed on medical leave. Ultimately, Biernesser extended McEwen's medical leave beyond the 26 weeks to which he was entitled pursuant to the UPMC Family Medical Leave of Absence policy. On May 23, 2006, Plaintiff presented a note from his treating physician, which stated that McEwen could return to work for a maximum of four hours per day, two days per week, and noted that McEwen's ability to stand and walk was limited. On June 5, 2006 Plaintiff returned to work as a "casual" employee in the Cath Lab as a Radiation Technologist with the noted restrictions, at his former rate of pay. McEwen performed his duties in the Cath Lab for over a year without incident.

In July 2007, McEwen requested that his hours be increased from eight (8) hours per week to twenty (20) hours per week. His objectives were: (1) to eventually get back to work full-time; and (2) to maintain UPMC health benefits, which would otherwise have been lost as a result of his wife leaving the employ of UPMC.[1] CSMF 27. In connection with his request for increased hours, McEwen submitted a note from his doctor, Mary Ann Miknevich, M.D., which stated: "The above [patient] may increase his current work hours to a part-time basis (20 hrs/week) with no restrictions."

At the time of McEwen's request, UPMC concluded that there was not a sufficient volume of work in the Cath Lab to support additional work hours. McEwen believes that work was available in the Cath Lab because three employees left the department and another one was

---

[1] McEwen's wife was a Registered Nurse who had worked in the Cath Lab until her resignation.

working overtime, and McEwen did not observe a low volume of patients. UPMC did offer McEwen the option of working an additional 10-12 hours per week in the Interventional Radiology Lab ("Angio Lab"). McEwen was given the opportunity to "shadow" a technologist in the Angio Lab for an eight-hour shift prior to deciding whether to accept the offer. Once a technician "scrubs in" to assist with a procedure in the Angio Lab, he/she is required to stand for the entire procedure, which may take 1-2 hours, to maintain a sterile environment. As McEwen explained, "It's real hard to leave a case whenever you're in the middle of it. It's not something you can just walk away from." McEwen Deposition at 101. Although the job description for McEwen's job in the Cath Lab was similar, in actuality he was able to sit and stand alternately because two technologists took turns with procedures and one technologist always sat to shoot pictures. By contrast, there was only one technologist in the Angio Lab, who served as a "Jack of all trades" and scrubbed in for all procedures. Plaintiff asserts that the inability to sit down while in the Angio Lab is the essence of his Complaint. Response to CSMF ¶ 45.

Plaintiff asserts that he informed Delano Brown, the supervisor of the Angio Lab, that he was experiencing difficulties with the amount of standing. However, on October 26, 2007, approximately three months after McEwen began working in the Angio Lab, Dr. Miknevich issued a second note, which stated: "The above [patient] is to limit work hours to 20 hours/week." The note did not set forth any other restrictions on McEwen's activities, nor did it set any limits on the amount of standing which may be involved.

On November 14, 2007, Plaintiff provided a third note from Dr. Miknevich, which noted that McEwen had been seen that day with "worsening pain." Dr. Miknevich stated that McEwen could "perform sedentary/light duty work 4-6 hours per day only 1 to 2 days/week effective immediately." Upon receipt of this note, UPMC restricted McEwen's hours by no longer

3

assigning him to the Angio Lab. The reduction in hours resulted in McEwen again becoming classified as a "casual" employee rather than a "part-time" employee.

LaGard testified in her deposition that Biernesser had offered McEwen the option of performing data entry on the fourth floor in the Cath Department (outside of the Cath Lab), but that McEwen was not interested, expressed concerns about sitting that long, and wanted to stay in the lab. LaGard Deposition at 47-50. Plaintiff subsequently prepared an affidavit which asserted that this data entry work was never offered to him, and that he would have accepted had it been offered. Biernesser's deposition contains no discussion about this topic and there is no affidavit/declaration from her in the record.

On December 6, 2007, Dr. Miknevich submitted another note, which explained that McEwen was experiencing chronic stump pain associated with the amputation of his left leg and that he had suffered a medial meniscus tear in his right knee. Dr. Miknevich opined that McEwen should be permitted to change positions as tolerated and that he not be required to stand or walk greater than 15 minutes at a time. December 10, 2007 was McEwen's last day of work at UPMC. He did not call to resign or submit a letter of resignation.

In December 2007, Plaintiff applied for Social Security disability benefits and represented that he was unable to perform any gainful employment due to his medical condition, with or without accommodation. Plaintiff's application was approved and he began receiving Social Security disability benefits in May 2008. Plaintiff has not obtained any other employment since December 2007.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

[Summary Judgment] shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest

on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Legal Analysis

Disability discrimination claims under the ADA are analyzed under the familiar McDonnell-Douglas burden-shifting framework. If Plaintiff makes out a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action, and if so articulated, the burden shifts back to Plaintiff to demonstrate that the employer's stated reason was pretextual. The same legal standards and analysis govern ADA and PHRA disability claims, *Glanzman v. Metropolitan Mgt. Corp.*, 391 F.3d 506, 509 (3d Cir. 2004), and therefore, McEwen's ADA and PHRA claims will be addressed collectively.

To establish a prima facie case in a disability discrimination claim under the ADA or PHRA, Plaintiff must show that: (1) he has a "disability"; (2) he is qualified for the position; and (3) he has suffered an adverse employment action because of that disability. *Buskirk v. Apollo Metals,* 307 F.3d 160, 166 (3d Cir. 2002).

UPMC contends that it went far beyond its legal obligations in attempting to accommodate McEwen's disability. UPMC reasons that it held his job open far longer than required under its policy, that it complied with all restrictions identified by Plaintiff's treating physician, and that it created a hybrid position that permitted McEwen to work in two different labs. UPMC argues

6

that Plaintiff's request for an increase in work to 20 hours per week did not require any "accommodation" under the ADA or PHRA, as it was not motivated by his disability at all. UPMC further contends that McEwen's request to periodically sit while in the Angio Lab was not cognizable because it was contradicted by his treating physician's opinion that he was able to work "with no restrictions." Finally, UPMC contends that McEwen is judicially estopped from pursuing a disability claim because he represented in his application for Social Security benefits that he was unable to perform any gainful employment, with or without reasonable accommodation.

Plaintiff contends that UPMC was required to allow him to work all 20 hours per week in the Cath Lab, which would have enabled him to alternately sit and stand. McEwen theorizes that because he supported nearly all of his weight on his right leg, the additional standing required in the Angio Lab created a burning sensation such that he became totally disabled. Plaintiff agrees that there is no accommodation, at this time, that would make it possible for him to work – but, he explains that he is suing UPMC for disabling him. McEwen further contends that in November 2007, UPMC refused to accommodate his restriction to light/sedentary work by assigning him to a data entry task.

In its reply brief, UPMC contends that it was not required to assign McEwen to the data entry work, because that work was typically done by nurses and was not equivalent to his prior job. UPMC also asserts that Plaintiff has failed to provide any evidence of record in support of its theory that UPMC caused his total disability.

Must UPMC Accommodate McEwen's Request to Work Additional Hours?

UPMC first argues that McEwen has failed to establish a prima facie case because he has

not shown that he suffered an adverse employment action "because of" his "disability." In essence, UPMC reasons that McEwen's request for an increase in his work hours to 20 hours per week was not related to the amputation of his left leg, and therefore, UPMC had no duty under the ADA or PHRA to accommodate his request. The Court agrees with UPMC.

As an initial matter, the record is clear that after his return to work following the motorcycle accident in June 2006, McEwen worked for over one year in the Cath Lab. He was able to perform the essential functions of that job without difficulty, albeit on a reduced schedule. Thus, it is abundantly clear that UPMC reasonably accommodated the disability associated with the original amputation of McEwen's left leg. Indeed, McEwen does not contest this original accommodation.

In July 2007, McEwen requested an increase to 20 hours per week. It is undisputed that McEwen made this request for personal reasons. McEwen explained that he wanted to eventually return to work full-time, and that he wanted to qualify for UPMC health benefits because his wife was resigning from her position in the UPMC Cath Lab and would be losing those health benefits. McEwen Deposition at 37-38. There is no evidence in the record from which a reasonable fact-finder could conclude that the increase in work hours was necessary to accommodate McEwen's disability.

The United States Court of Appeals for the Ninth Circuit faced an analogous situation in *Hunter v. Home Depot U.S.A., Inc.*, 270 Fed. Appx. 654 (9th Cir. 2008). The employee in that case had been performing the essential functions of her job on a reduced schedule and then requested additional work hours for financial reasons. The Court held that such a request "does not constitute a request for a reasonable accommodation based on a disability." *Id.* at 655. The Court reasoned that the Plaintiff had failed to demonstrate that her request for more hours was

8

"because of" her disability and therefore did not come within the scope of 42 U.S.C. § 12112(a) (which bars discrimination, including failing to accommodate, "because of" an individual's disability). The same reasoning applies here. McEwen requested additional work hours for personal reasons, rather than as a reasonable accommodation "because of" his disability. Thus, UPMC's denial of McEwen's request to work 20 hours per week in the Cath Lab did not violate the ADA or PHRA.[2]

Whether UPMC Improperly Offered McEwen a Position in the Angio Lab

In any event, UPMC did offer McEwen the opportunity to work additional hours, although the extra ten hours per week would have to be in the Angio Lab. According to Plaintiff, Delano Brown assured him that there was a chair in the Angio Lab and that he would be able to alternately sit and stand. Indeed, Plaintiff contends that UPMC was required to provide a position which would accommodate his limitations with sitting and standing. Plaintiff's contentions are unavailing.

As noted above, the position in the Angio Lab was an attempt to fulfill McEwen's request for additional hours – UPMC was not required to make this position available and did not force McEwen to accept it. Prior to starting work in the Angio Lab, McEwen was given the opportunity to shadow somebody for an eight-hour shift in the Angio Lab to see if he could do the job. McEwen Deposition at 95-96. McEwen decided to accept the position in the Angio Lab, although he expected that it would be temporary until something opened up in the Cath Lab when the budget issues were resolved. McEwen Deposition at 46-47. Working in the Angio Lab was

---

[2] The Court need not reach the question of whether additional work was available in the Cath Lab. However, the Court notes that Plaintiff has failed to demonstrate that UPMC's evaluation of its staffing needs was a pretext for disability discrimination.

not required "because of" McEwen's disability, and thus he cannot make out a prima facie case of a failure to accommodate his disability under the ADA or PHRA.

Moreover, McEwen was not "qualified" for the position in the Angio Lab. It is undisputed that once McEwen started actually performing the work in the Angio Lab, he discovered that there was not a sufficient opportunity for him to alternately sit and stand. In the Cath Lab, there were typically two techologists on duty and they took turns performing the tasks of shooting pictures (while sitting) and "scrubbing in" to assist the operating physician (while standing). If there was only one technologist in the Cath Lab, that person sat and shot pictures. By contrast, in the Angio Lab, there was only one technician on-duty and that person acted as a "Jack of all trades" who would shoot pictures and "scrub in" with the doctor on each procedure. McEwen Deposition at 45. It is undisputed in the record that the ability to stand throughout a procedure was an essential job function. Once a technician "scrubs in" to assist with a procedure in the Angio Lab, he is required to stand for the entire procedure, which may take 1-2 hours, to maintain a sterile environment. CSMF 48. McEwen acknowledged that it was not practical for him to request a break to sit down and rest: "It's real hard to like leave a case whenever you're in the middle of it. It's not something you can just walk away from." McEwen Deposition at 101. It became apparent after several months that McEwen could not tolerate the amount of standing that was required in the Angio Lab. Thus, the record demonstrates that McEwen was not able to perform the essential functions of the technologist job in the Angio Lab.

Even assuming, arguendo, that McEwen could make out a prima facie case, the mere fact that the assignment to the Angio Lab turned out to be an imperfect solution is not a basis for holding UPMC liable. The ADA contemplates that both the employer and the employee will engage in an "interactive process" to develop an appropriate accommodation of a disability. In

10

*Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010), the Court of Appeals observed: "both parties have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith." *Id.* at 507 *(quoting Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997)). To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999). Moreover, the hallmark of the interactive process is that it be "flexible." *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 771 (3d Cir. 2004).

The record in this case reflects that McEwen requested additional work hours; that no additional time was available in the Cath Lab; and that McEwen was never forced to accept work in the Angio Lab. McEwen was given an opportunity to shadow an employee for an eight-hour shift before he voluntarily accepted the assignment in the Angio Lab. UPMC was attempting to meet McEwen's request for more hours. As it turned out, McEwen was unable to perform the essential functions of the Angio Lab job, but that is why the accommodation is described as a flexible, "interactive process." The law should not chill employers' willingness to engage in the interactive process by holding employers liable when such experiments do not work out. Rather, it is incumbent on both parties to communicate about whether the attempted accommodations are successful.

The record also reflects that although McEwen allegedly informed the supervisor of the Angio Lab that he was having problems due to his inability to sit during the shift, his treating

physician submitted two notes during the same timeframe stating that McEwen could work "with no restrictions." It was incumbent upon McEwen to clarify the contradiction between his opinion and that of Dr. Miknevich. *See Crosby v. UPMC*, 2009 WL 735868 *14 (W.D. Pa. 2009) (interactive process creates obligation on both parties and if employee disagrees with physician's directive, employee should submit a revised directive). Indeed, once McEwen submitted the November 14, 2007 note from Dr. Miknevich, which described "worsening pain" and stated that McEwen should be limited to "sedentary/light duty work 4-6 hours per day only 1 to 2 days/week effective immediately," UPMC promptly restricted McEwen's hours by no longer assigning him to the Angio Lab. There is no evidence in the record that UPMC forced McEwen to work in the Angio Lab. In sum, a reasonable jury could not conclude that UPMC failed to engage in a reasonable interactive process.

Finally, McEwen argues in his brief that he "is suing UPMC for disabling him." In essence, Plaintiff reasons that the assignment to the Angio Lab caused him to suffer injuries to his remaining leg, such that he became totally disabled. There are multiple flaws with this theory. The Complaint alleged facts in support of a "failure to accommodate" theory under the ADA and PHRA -- UPMC was not put on notice to defend against this "causation of disability" claim. Moreover, Plaintiff has cited no legal authority for the proposition that such a claim is cognizable under the ADA or PHRA, nor has the Court located any such authority. In *Bertinetti v. Joy Mining Machinery,* 231 F.Supp.2d 828, 835 (S.D. Ill. 2002), the Court rejected a similar claim, stating: "To the extent [the employee] is attempting to raise a personal injury claim for an exacerbation of his condition or for injuries sustained . . . , his remedy lies in tort or under the Illinois Worker's Compensation Act. *Accord Smith v. Blue Cross Blue Shield of Kansas*, 102 F.3d 1075, 1077-78 (10th Cir.1996)." In sum, McEwen cannot recover under the ADA or PHRA for

personal injuries allegedly caused by UPMC in assigning him to work in the Angio Lab. Even assuming, arguendo, that this cause of action were cognizable, Plaintiff has submitted no evidence upon which a jury could reasonably find that UPMC "caused" McEwen to become totally disabled.

Accommodation By Assignment of Data Entry Work

McEwen's last allegation of error is that in November 2007, UPMC failed to offer him a data entry assignment. The record on this issue is somewhat muddled. LaGard testified that Biernesser had talked to McEwen about performing some data entry work on the fourth floor in the administrative offices, but that McEwen turned the offer down because he did not think that he could sit that long. LaGard Deposition at 47-49. McEwen testified that he was not offered an opportunity to perform this data entry work, and that he would have accepted it. Biernesser's deposition does not address the data entry work, and there is no affidavit/declaration from her. LaGard further testified that this was not a "position" but rather, just an opportunity to ease the load of someone else in the department. She also stated: "It's really a nurse that should be doing [that data entry]." *Id.*

For the purpose of this summary judgment motion, the Court will assume that UPMC did not offer the data entry work to McEwen and that he would have accepted had it been offered. Nevertheless, the Court concludes that there was no violation of the ADA or PHRA. As explained above, the request for additional hours of work by McEwen was prompted by personal reasons, rather than as an accommodation of his disability. UPMC was not required by the ADA or the PHRA to provide this additional work. UPMC attempted to fulfill McEwen's request by assigning work in the Angio Lab because work in the Cath Lab was not available. When it

13

became apparent that McEwen could not perform the essential functions of the Angio Lab job, UPMC properly reduced his hours and returned him to the Cath Lab, in accordance with the restrictions set forth in Dr. Miknevich's note. In the Court's view, this represented a reasonable exercise of the interactive process contemplated by the ADA. Even if additional hours of work were available doing data entry, UPMC was simply not required by the ADA or PHRA to offer that work to McEwen. The data entry work was not equivalent to McEwen's job as a technician; it was typically performed by a nurse; and it was located on another floor. *See Mengine,* 114 F.3d at 418 (there is no duty to accommodate a disability by assigning an employee to a different position). Thus, the Court need not reach the issue of whether McEwen's claim is barred by his representation to the Social Security administration that he was no longer able to perform any gainful employment, and his subsequent receipt of Social Security disability benefits. Nor must the Court consider whether Plaintiff short-circuited the "interactive process" by resigning from his employment at UPMC without notice.

In accordance with the foregoing, UPMC's motion for summary judgment will be GRANTED. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MCEWEN,<br><br>Plaintiff,<br><br>v.<br><br>UPMC SHADYSIDE PRESBYTERIAN HOSPITAL,<br><br>Defendant. | 2:09-cv-1181 |

## ORDER of COURT

In accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR SUMMARY JUDGMENT *(Document No. 20),* filed by Defendant UPMC Shadyside Presbyterian Hospital is **GRANTED**. The clerk shall docket this case closed.

SO ORDERED this 23rd day of November, 2010.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: John Newborg, Esquire
Email: jdnewborg@aol.com

John Myers, Esquire
Email: jmyers@eckertseamans.com

Andrew Quesnelle, Esquire
Email: aquesnelle@eckertseamans.com